IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| In re: | ) | Chapter 7 (Involuntary) |
| | ) | |
| **DANNY L. DARBY** | ) | Case No.  14-13360-RGM |
| | ) | |
| **Alleged Debtor.** | ) | |
| | ) | |

## MOTION TO DISMISS INVOLUNTARY PETITION

Danny L. Darby, the alleged debtor in the above captioned involuntary bankruptcy case (the "Alleged Debtor"), by and through undersigned counsel, hereby moves to dismiss the involuntary petition (the "Involuntary Petition") filed under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") by petitioner Farm Credit of the Virginias, ACA (the "Petitioning Creditor") pursuant to (1) Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule 1011(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and (2) Rule 305(a)(1) of the Bankruptcy Rules, and for the award of its attorneys' fees, costs, and damages pursuant to section 303(i) of the Bankruptcy Code, and in support thereof respectfully states as follows:

I. **Introduction**

The Involuntary Petition filed against the Alleged Debtor fails to meet the requirements of section 303(b) of the Bankruptcy Code and therefore must be dismissed.  The Involuntary Petition lists only one petitioning creditor despite the fact that the Alleged Debtor has well in excess of twelve creditors.  The Petitioning Creditor should be denied the opportunity to solicit

---

WHITEFORD TAYLOR & PRESTON LLP
Michael E. Hastings, Esq., Va. Bar No. 36090
114 Market Street, Suite 210
Roanoke, VA 24011
Phone: (540) 759-3560
Fax:  (540) 343-1011

David W. Gaffey, Esq., Bar No. 85088
3190 Fairview Park Drive, Suite 300
Falls Church, VA 22042-4510
Phone: (703) 280-3374
Fax: (202) 327-6158

*Counsel for Danny L. Darby*

additional creditors to join the Involuntary Petition because this case was filed in bad faith. The Petitioning Creditor filed the Involuntary Petition with actual knowledge that the Alleged Debtor had twelve or more creditors derived from extensive state court discovery proceedings. This demonstrates a clear intent to circumvent the filing requirements of section 303(b). Even if the Petitioning Creditor claims that it somehow lacked sufficient information concerning the Alleged Debtor's creditors, the Involuntary Petition was nevertheless filed in bad faith because the Petitioning Creditor had a duty to reasonably investigate the number of the Alleged Debtor's creditors. Not only did the Petitioning Creditor fail to take even basic steps to further investigate the Alleged Debtor's creditors after receiving information suggesting that the Alleged Debtor had a large number of creditors, but the Petitioning Creditor also *actively avoided* receiving information that would have clearly established that it could not file the Involuntary Petition on its own. Regardless of whether the Petitioning Creditor had actual knowledge or remained intentionally and willfully ignorant of the fact that the Alleged Debtor had twelve or more creditors, the Involuntary Petition must be dismissed as filed in bad faith.

**Factual Background**

1. On September 12, 2013, the Petitioning Creditor obtained a judgment by consent against the Alleged Debtor in the Circuit Court of Fauquier County, Virginia in the amount of $3,046,189.70, plus pre-judgment interest of $26,901.60, attorney fees of $69,132.70, and post-judgment interest at the rate of six percent (6%) *per annum* (the "Judgment").

2. Following the entry of the Judgment, the Petitioning Creditor served the Alleged Debtor with a *Summons for Debtor Interrogatories* on November 15, 2013, and filed an associated *Request for Subpoena Duces Tecum* on October 15, 2013 (the "First Interrogatories"). The Alleged Debtor responded to the First Interrogatories by producing responsive

2

documentation on a rolling basis prior to the interrogatory deposition taken by counsel for the Petitioning creditor on December 13, 2013, in his Charlottesville, Virginia offices (the "First Deposition").  Counsel for the Petitioning Creditor examined the Alleged Debtor very thoroughly concerning his assets and liabilities during the First Deposition, which lasted for more than two hours.

3. Following the First Deposition, counsel for the Alleged Debtor and counsel for the Petitioning Creditor communicated concerning the Alleged Debtor's inability to satisfy the Judgment from his existing non-exempt assets, the fact that the Alleged Debtor had no individual assets because all of his assets were owned either by the Alleged Debtor and his wife as tenants by the entirety or by an entity that was wholly owned by the Alleged Debtor with his wife as tenants by the entirety, and that the Alleged Debtor did not have regular income.  The Alleged Debtor informed the Petitioning Creditor that he intended to satisfy the Judgment out of the proceeds of a start-up business venture in which the Alleged Debtor is involved.  The Alleged Debtor also made an offer to the Petitioning Creditor to secure the Judgment with a second lien on the farm owned by an entity owned by the Alleged Debtor and his wife as tenants by the entirety (the "Farm") and structure the repayment of the Judgment over time.  The Petitioning Creditor never responded to the Alleged Debtor's offer, saying only (through counsel) that the offer was unacceptable to the Petitioning Creditor because there was a prior encumbrance on the property.[1]

4. On June 30, 2014, the Petitioning Creditor caused a second Summons to Answer Interrogatories (the "Second Interrogatories," and together with the First Interrogatories, the "Post-Judgment Interrogatories") to be served on the Alleged Debtor.  On the same date, the

---

[1] The Farm is encumbered by a first-priority lien, but the Alleged Debtor believes that the market value of the Farm exceeds the amount of the first-priority lien by an amount that would secure fully the Judgment.

3

Petitioning Creditor caused the Fauquier County Circuit Court to issue a *Subpoena Duces Tecum* and *Notice of Hearing—Exemption Claim* on the Alleged Debtor.

5. In response to the Second Interrogatories, a second deposition was conducted on August 1, 2014, in the office of counsel for the Petitioning Creditor (the "Second Deposition"). Prior to the Second Deposition, the Alleged Debtor produced, on a rolling basis, volumes of financial information including, without limitation, bank statements for the Alleged Debtor and entities in which the Alleged Debtor holds an interest, credit card statements, investment account statements, tax returns, and virtually everything in the Alleged Debtor's (or his financial professionals') possession that was requested by the Petitioning Creditor.

6. During the Second Deposition, counsel for the Petitioning Creditor asked several pointed questions about the source of money utilized by the Alleged Debtor to pay his regular monthly obligations. The Alleged Debtor testified about numerous personal loans from several of the Alleged Debtor's friends that were used to maintain the monthly obligations of the Alleged Debtor. The Alleged Debtor also testified regarding numerous obligations owed to other creditors.

7. At or near the conclusion of the Second Deposition, counsel for the Petitioning Creditor indicated that he would need additional information regarding the source of certain wire transfers to the Alleged Debtor that constituted personal loans to the Alleged Debtor. The Alleged Debtor was not able to recall the specific lender for each wire transfer. Counsel for the Petitioning Creditor stated that he would identify the specific wire transfers that he was interested in receiving additional information about, and the Alleged Debtor agreed to provide the identity of each lender for each such transfer identified.

8.      Rather than identifying the wire transfers that required additional explanation, and without any further communication with the Alleged Debtor or his counsel, the Petitioning Creditor instead filed the Involuntary Petition.  The Petitioning Creditor is the sole petitioning creditor listed on the Involuntary Petition.

II.     **The Court Should Dismiss This Case Pursuant to Rule 12 of The Federal Rules of Civil Procedure and Rule 1011 of The Federal Rules of Bankruptcy Procedure.**

a.  **The Involuntary Petition Fails to Satisfy the Requirements of Section 303(b)**

Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this case by Rules 1011(b) and 7012 of the Bankruptcy Rules, provides that a pleading may be dismissed for failure to state a claim upon which relief can be granted.  The Involuntary Petition must be dismissed because it fails to meet the basic requirements of section 303 of the Bankruptcy Code, which governs when an involuntary bankruptcy case may be commenced.  Section 303 of the Bankruptcy Code states:

> (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title —
>
> (1) by *three or more entities,* each of which is . . . a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount . . . if such noncontingent, undisputed claims aggregate at least $13,475 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;
>
> (2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $13,475 of such claims[.]

11 U.S.C. § 303(b).

A summary of the Alleged Debtor's creditors is attached to this pleading as <u>Exhibit A.</u> <u>Exhibit A</u> lists more than twelve non-contingent and non-disputed creditors holding in excess of $13,475 in aggregate unsecured claims.  Section 303(b) therefore required that the Involuntary

Petition be filed by at least three qualifying creditors. Because the Petitioning Creditor was the sole petitioning creditor on the Involuntary Petition, the basic requirements to place the Alleged Debtor into involuntary bankruptcy set forth in section 303(b) are not met. The Involuntary Petition therefore fails to state a claim upon which relief can be granted.

> **b. The Involuntary Petition Should Be Dismissed Without Leave to Seek Additional Petitioning Creditors Because the Petition was Presumptively Filed in Bad Faith**

The Petitioning Debtor should not be permitted to solicit additional creditors of the Alleged Debtor to join the Involuntary Petition. While section 303(c) ordinarily permits additional creditors to join an involuntary petition after filing, this right is not absolute. Where a creditor files an involuntary bankruptcy petition as the sole petitioning creditor despite actual knowledge that the debtor has twelve or more creditors, the Fourth Circuit has held that the involuntary petition is presumptively filed in bad faith and must be dismissed without any right to amend. *In re United States Optical, Inc.*, 1993 U.S. App. LEXIS 6960, at *14 (4th Cir. Apr. 1, 1993) (stating that "an initiating creditor who files as a sole petitioner with the knowledge that the debtor has 12 or more creditors (and thus that three creditors are needed to file the petition) files in bad faith"); *see also In re Caucus Distribs.*, 106 B.R. 890, 906 (Bankr. E.D. Va. 1989) ("The issue of whether a sole petitioning creditor intentionally and knowingly filed a deficient involuntary petition in bankruptcy is a limited one. If the alleged debtor establishes that the creditor knew that the debtor had in excess of twelve creditors and filed as a sole creditor nevertheless, the appropriate result is the dismissal of the involuntary petition."); *Basin Electric Power Cooperative v. Midwest Processing Co.*, 769 F.2d 483, 486 (8th Cir. 1985) ("An essential prerequisite for allowing joinder of additional creditors to cure a defective petition is that the

6

petition was filed in good faith. If the original petition was a sham, prepared with a view of being later supported by intervention of other creditors, joinder should be denied.").

Here, the Petitioning Creditor had actual knowledge that the Alleged Debtor had twelve or more creditors at the time the Involuntary Petition was filed. The Petitioning Creditor engaged the Alleged Debtor in numerous hours of depositions pursuant to both Post-Judgment Interrogatories and asked specific and directed questions regarding the Alleged Debtor's other creditors. The Alleged Debtor specifically identified well in excess of twelve creditors during the Post-Judgment Interrogatories, including:[2]

1. Bank of America – $125,000.00 outstanding balance
2. Ernie Kalman – $300,000.00 loan
3. William Petersen – $70,000.00 total loan
4. Internal Revenue Service – $50,000.00
5. American Express – $50,000.00 balance
6. Fauquier Capital, LLC – $2,900,000.00 loan
7. Morgan Stanley – $49,341.14
8. Paul Singer, LLC – $99,000 loan
9. Lump Sum Pension Loans – $8,400.00
10. Cashpoint – $4,350.00 loan against vehicle title
11. BB&T – $490.48 Credit Account Balance
12. Farm Credit of the Virginias, ACA – $3,324,995.38

---

[2] This list represents the Alleged Debtor's creditors that are actually known to the Petitioning Creditor as of the filing of the Involuntary Petition based on testimony of the Alleged Debtor during the Post-Judgment Interrogatories or upon documents that were produced pursuant to one or more subpoenaes *duces tecum*. The Alleged Debtor will supplement this list as needed or as required by Bankruptcy Rule 1003(b).

The Petitioning Creditor also received many boxes worth of financial information produced in response to the Petitioning Creditor's various Post-Judgment Interrogatories. These documents included bank statements, credit card statements, and evidence of wire transfers supporting the Alleged Debtor's testimony regarding his various creditors as well as identifying additional creditors.

As a result of this extensive post-judgment discovery, the Petitioning Creditor was without a doubt aware that the Alleged Debtor had twelve or more creditors. The Involuntary Petition was an attempt by the Petitioning Creditor to circumvent the requirements of the Bankruptcy Code and singlehandedly force the Alleged Debtor into a bankruptcy proceeding in the hope that two additional creditors would join the Involuntary Petition after filing. The Fourth Circuit has declared the filing of an involuntary petition in this manner to be presumptively in bad faith. *In re United States Optical, Inc.*, 1993 U.S. App. at *14. Accordingly, the Involuntary Petition must be dismissed without the opportunity to amend or seek the joinder of additional creditors. *In re Caucus Distribs.*, 106 B.R. at 06. *Accord In re Herriott*, 1 B.C.D. 793, 795 (Bankr. D. Mass. 1975) (holding that "if allegation that debtor had less than twelve creditors is found to have been made in bad faith, recklessly, or fraudulently, the court lacks jurisdiction and therefore the involuntary petition must be dismissed and there is nothing in which other creditors can intervene").

    **c. The Involuntary Petition Should Alternatively be Dismissed as Filed in Bad Faith Because the Petitioning Creditor Failed to Conduct a Reasonable Inquiry Prior to Filing and the Filing Was Made For an Improper Purpose**

Should the Court determine that the Petitioning Creditor did not have actual knowledge that the Alleged Debtor had twelve or more creditors, the Involuntary Petition should nevertheless be dismissed as having been filed in bad faith. In the absence of actual knowledge

by a petitioning creditor that the requirements of section 303(b) are not met, the Fourth Circuit applies a two-part test requiring that an involuntary petition be dismissed as filed in bad faith (1) where a reasonable person would not have filed the petition (the objective test), and (2) where the petitioning creditor filed the petition with improper motivations (the subjective test). *Atlas Machine & Iron Works, Inc. v. Bethlehem Steel Corp.*, 986 F.2d 709, 716 (4th Cir. 1993) ("To determine bad faith, a court examines whether a reasonable person would have filed the petition (objective test) as well as the motivations of the petitioner (subjective test)." The Petitioning Creditor fails both the objective and subjective tests.

### i. The Petitioning Creditor's Actions Were Objectively in Bad Faith

The Petitioning Creditor's decision to file the Involuntary Petition was objectively unreasonable.  A petitioning creditor is required to conduct reasonable due diligence to attempt to establish the number of creditors of an alleged debtor prior to filing an involuntary petition as a sole petitioner. *See, e.g. In re Stewart*, 2008 Bankr. LEXIS 4654, at *28 (Bankr. E.D. Va. Sept. 30, 2008) ("Metalmark should have satisfied itself before filing the involuntary petition that it was eligible to do so as the sole petitioning creditor.").  The Petitioning Creditor had the clear opportunity to conduct the necessary inquiry into the Alleged Debtors' creditors during the Post-Judgment Interrogatories.  The Petitioning Creditor examined the Alleged Debtor extensively for several hours on two separate occasions, and received large quantities of financial documentation concerning the Alleged Debtor's finances.  Had the Petitioning Creditor used either one of these opportunities to simply ask the Alleged Debtor the total number of his creditors, the Creditor could have satisfied its investigatory burden.  The Petitioning Creditor could also have chosen to review the vast quantity of financial information freely provided by the Alleged Debtor, which clearly establishes that the Alleged Debtor had well in excess of twelve creditors.  A reasonable

person would not have actively avoided these numerous opportunities to establish the number of the Alleged Debtor's creditors prior to filing an involuntary petition.

Furthermore, the Petitioning Creditor specifically stated that it would identify specific wire transfers received by the Alleged Debtor for which the Petitioning Creditor wanted additional information. The Petitioning Creditor thus was aware of the presence of these numerous additional creditors. The Alleged Debtor agreed to provide such information. However, rather than identifying the wire transfers that the Petitioning Creditor was interested in, it elected instead to file the Involuntary Petition prior to receiving such information. This is a clear attempt to avoid receiving information showing that the Alleged Debtor had twelve or more creditors. This action itself is objectively unreasonable.

The Petitioning Creditor's filing of the Involuntary Petition is particularly unreasonable because the Alleged Debtor's testimony and documents produced during the Post-Judgment Interrogatories put the Petitioning Creditor on notice that the Alleged Debtor very likely had more than twelve creditors. Where information available to a creditor raises a reasonable suspicion that a debtor has more than the minimum twelve creditors, this Court has held that a creditor is under a heightened duty to investigate prior to filing an involuntary petition. *See In re Stewart*, 2008 Bankr. LEXIS at *31 ("Here, unlike in Fox, there were red flags. Metalmark could not rely on the interrogatories alone to conclude that it could be the sole petitioning creditor.").

In *In re Stewart*, the alleged debtor attended interrogatories without the assistance of counsel. *Id.* at 32-33. While the alleged debtor could only list less than twelve creditors during questioning, this Court found that the debtor's testimony and the facts known to the creditor, along with the fact that the debtor did not have the assistance of counsel, raised sufficient questions regarding the extent of the debtor's liabilities that the creditor was required to conduct

10

a further and more complete investigation. *Id.* Among the facts cited by the court as red flags requiring further investigation were the debtor's sale of land and motor vehicles to make his mortgage payments; the debtor's 49% ownership interest in a struggling business; the fact that the business's contracts might not be profitable; the debtor's $100 per week in total income; and a lack of clarity regarding how the debtor was able to meet his basic financial obligations. *Id.*

The "red flags" present here are directly analogous to the warnings present in *In re Stewart* that this Court found to require further investigation by a creditor prior to filing an involuntary petition. *In re Stewart*, 2008 Bankr. LEXIS at *32-33. The Petitioning Creditor knew as a result of the Post-Judgment Interrogatories that the Alleged Debtor (1) has no current source of regular earnings, (2) has substantial maintenance and upkeep expenses, (3) supports himself through loans from friends, (4) has millions of dollars of personal debt, and (5) has several business ventures to which the Alleged Debtor is liable. This information begs the question of how the Alleged Debtor was able to meet his substantial obligations given a lack of regular income. As this Court stated in *Stewart*, "[t]hese are circumstances strongly suggesting [a debtor] was financially stressed and that other creditors could well exist." *Id.* The information available to the Petitioning Creditor required it to further investigate whether it could properly file as a sole petitioning creditor. The failure of the Petitioning Creditor to do so constitutes objective bad faith.

The Petitioning Creditor's conduct in filing the Involuntary Petition clearly establishes objective bad faith. The Petitioning Creditor ignored several opportunities to ascertain the number of the Alleged Debtor's creditors despite numerous red flags suggesting a strong likelihood that the Alleged Debtor had twelve or more creditors. Determining whether the Petitioning Creditor was eligible to file the Involuntary Petition as the sole petitioning creditor

11

could have been as simple as asking the Debtor how many creditors it had during any of the numerous hours of interrogatories. The Petitioning Creditor's failure to take these basic steps constitutes clear objective bad faith.

### ii. The Petitioning Creditor's Actions were Subjectively in Bad Faith

The Petitioning Creditor also acted with subjective bad faith. The subjective bad faith inquiry looks at the actual motivations of the petitioning creditor. *Atlas Machine & Iron Works, Inc. v. Bethlehem Steel Corp.*, 986 F.2d at 716. Here, the actions of the Petitioning Creditor demonstrate that it actively intended to circumvent the requirements of section 303(b) of the Bankruptcy Code and to file the Involuntary Petition for the purpose of using the bankruptcy case as leverage in its attempts to recover the Judgment from an otherwise judgment-proof debtor.

The conduct of the Petitioning Creditor reveals an actual intent to circumvent the requirements of section 303(b) by filing the Involuntary Petition with an intentional disregard for any information showing that the Alleged Debtor had twelve or more creditors. As discussed above, the Petitioning Creditor had numerous opportunities to investigate the number of the Debtor's creditors. The facts known to the Petitioning Creditor, such as the fact that the Alleged Debtor has no regular income while meeting substantial monthly obligations and servicing significant other debts, as well as testimony under oath that the Alleged Debtor borrowed extensively from friends to maintain his substantial regular monthly expenses, strongly suggested that the Alleged Debtor would have a large number of creditors. Despite this knowledge, the Petitioning Creditor actively avoided information that would establish that the Alleged Debtor had twelve or more creditors. During the Second Deposition, the Petitioning Creditor's counsel stated that he would identify specific information regarding wire transfers to the Alleged Debtor

from various lenders for which the Petitioning Creditor wanted additional information. However, rather than identify the wire transfers to be explained, the Petitioning Creditor filed the Involuntary Petition as the sole petitioning creditor without warning and without giving the Alleged Debtor the opportunity to provide the requested information about its other creditors. The Petitioning Creditor's willful ignorance of the Alleged Debtor's creditors requires a finding that the Involuntary Petition was filed in bad faith. To allow the Petitioning Creditor to avoid a finding of bad faith in this case would be to countenance the circumvention of the requirements of the Bankruptcy Code through an intentional ignorance of the facts.

In addition to the bad faith manner in which the Petitioning Creditor filed the Involuntary Petition, this involuntary case was not filed for any legitimate bankruptcy purpose. "The determination of whether an involuntary petition was filed to accomplish an improper purpose must be examined in light of the purposes of any petition in bankruptcy," which are generally held to be: "(1) equality of distribution among creditors, (2) a fresh start for debtors, and (3) economical administration." *In re Caucus Distribs.*, 106 B.R. 890, 928 (Bankr. E.D. Va. 1989) (citing Report of the Commission on the Bankruptcy Laws of the United States, Part I, July 1973, p. 75.). The Involuntary Petition accomplishes none of these objectives. The Petitioning Creditor is the only creditor actively pursuing the Alleged Debtor. The Alleged Debtor's other creditors support him in his efforts to repay his obligations through the successful completion of various business ventures in which the Alleged Debtor is currently engaged. There is therefore no risk of an inequitable distribution of the Alleged Debtor's assets contrary to the intent of the bankruptcy priority scheme, need for an "economical administration" of the Alleged Debtor's assets, or need for a forced "fresh start" to be imposed on the Alleged Debtor. The Alleged Debtor is working to meet its obligations to its creditors outside of the bankruptcy process,

including the proposal to the Petitioning Creditor to enter into a repayment plan that is secured by assets otherwise unavailable to the Petitioning Creditor.

Because the Petitioning Creditor is the only creditor actively pursuing the Alleged Debtor, this involuntary bankruptcy case constitutes an improper attempt to use the bankruptcy process as a private debt collection mechanism. The Fourth Circuit has unequivocally held that debt collection is not an appropriate use of the bankruptcy courts. *Atlas Machine & Iron Works, Inc. v. Bethlehem Steel Corp.*, 986 F.2d 709, 716 (4th Cir. 1993) ("Debt collection is not a proper purpose of bankruptcy."). *See also Tucker v. Ohio Valley Amusement Co. (In re Tucker)*, 2011 U.S. Dist. LEXIS 125972, at *9 (N.D. W. Va. Oct. 31, 2011) ("An involuntary petition 'must be exercised for the good of the entire creditor body and for legitimate bankruptcy purposes. It is not intended to be used in an exclusively self-serving manner as a collection device.'") (citation omitted); *In re Tarletz*, 27 B.R. 787, 794 (Bankr. D. Colo. 1983) ("[I]t is obvious that the use of the bankruptcy court as a routine collection device would quickly paralyze this Court.").

The Petitioning Creditor also has a readily available collection mechanism in the Virginia state courts, of which it has already availed itself. The Petitioning Creditor obtained the Judgment and has spent considerable time and energy conducting the Post-Judgment Interrogatories and the associated discovery. That the bankruptcy courts may offer creditors expanded powers as compared to the state court, such as through the broad examination powers authorized by Rule 2004 of the Bankruptcy Rules, has been rejected as a legitimate reason to file an involuntary bankruptcy petition. *See In re Stewart*, 2008 Bankr. LEXIS at *40-41 ("Mere suspicion is not a good faith basis to file an involuntary bankruptcy petition. *Neither is the desire to utilize Rule 2004*. A reasonable creditor would investigate suspicious conduct, but would not file an involuntary petition based on it alone.") (emphasis added).

Finally, the involuntary bankruptcy case initiated by the Petitioning Creditor is not in the best interest of the Alleged Debtor's creditor body.  The Alleged Debtor is currently engaged in several business ventures with the intention of using the proceeds from the ventures to repay his creditors in full.  An involuntary bankruptcy, by contrast, would result in the discharge of the Alleged Debtor's obligations without any dividend being paid on the creditors' claims.  All of the Alleged Debtor's significant assets are owned as tenants by the entirety with his wife, or by a limited liability company owned as tenants by the entirety with his wife.  Neither the Petitioning Creditor nor any of the Alleged Debtor's other creditors have claims against the Alleged Debtor's wife.  Under Virginia law, the Alleged Debtor's creditors are unable to reach these assets held as tenants by the entirety.  *See Reid v. Richardson*, 304 F.2d 351, 353 (4th Cir. 1962) (holding that property held as tenants by the entirety is "not subject in any manner to individual claims of creditors of one spouse, and that neither the land itself nor any interest therein may be reached in satisfaction of a separate judgment against only one of them"); *Vasilion v. Vasilion*, 192 Va. 735, 740 (1951) (same).  The involuntary case sought by the Petitioning Creditor therefore will prejudice the Alleged Debtor's creditors because the bankruptcy case will result in the discharge of their debts without any real recovery.  In addition, the Involuntary Petition may harm the Alleged Debtor's ability to effectuate a financial reorganization outside of the bankruptcy court due to the stigma of having been forced into the involuntary bankruptcy.  That the Petitioning Creditor filed the Involuntary Petition despite the fact that succeeding in its efforts would harm its own financial interests is clear evidence of actual bad faith.  The Petitioning Creditor seeks only to abuse the bankruptcy process in the hope of coercing the satisfaction of the Judgment out of the Alleged Debtor's exempt assets.  This constitutes clear subjective bad faith.

Accordingly, the filing of the Involuntary Petition by the Petitioning Creditor fails both the objective and subjective prongs of the Fourth Circuit's good faith analysis. The Involuntary Petition must therefore be dismissed without the right to solicit additional petitioning creditors.

### III. The Court Should Dismiss This Case Pursuant to § 305(a)(1) of the Bankruptcy Code

The interests of both the Alleged Debtor and his creditors would be best served by the dismissal of the Involuntary Petition pursuant to section 305(a)(1) of the Bankruptcy Code. Section 305(a)(1) of the Bankruptcy Code states:

> The court, after notice and a hearing, may dismiss a case under this title or may suspend all proceedings in a case under this title, at any time if—
>
> (1) The interests of creditors and the debtor would be better served by such dismissal or suspension.

11 U.S.C. § 305(a)(1). The legislative history indicates that section 305(a)(1) was designed to be utilized where, for example, a small number of recalcitrant creditors attempted to interfere with an out-of-court restructuring that had the support of a debtor's other creditors and where a single or small group of creditors intend to use the involuntary bankruptcy to further only their personal interests. H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 325 (1977) ("The court may dismiss or suspend under the first paragraph, for example, if an arrangement is being worked out by creditors and the debtor out of court, there is no prejudice to the rights of creditors in that arrangement, and an involuntary case has been commenced by a few recalcitrant creditors to provide a basis for future threats to extract full payment."); S.Rep. No. 95-989, 95th Cong., 2d Sess. 35 (1979); *In re Wine & Spirits Specialties of Kansas City, Inc.*, 142 B.R. 345, 347 (Bankr. W.D. Mo. 1992).

The continuation of this involuntary bankruptcy case would result in substantial harm to both the Alleged Debtor and its creditors. While the Alleged Debtor has many unsecured

creditors holding substantial claims, as listed in Exhibit A to this Motion, the Alleged Debtor owns no valuable assets that would constitute property of the estate in a bankruptcy case. As discussed in Section III of this Motion, the Alleged Debtor's valuable assets are owned with his wife as tenants by the entirety and are not reachable by any of the Alleged Debtor's creditors. The conclusion of this chapter 7 case would be the discharge of the debtor's unsecured claims, which includes the Judgment and the unsecured claims identified in Exhibit A, without any return to these creditors.

Should this case be dismissed, on the other hand, the Alleged Debtor intends to repay his obligations in full. The Debtor has been actively working to generate revenue through a new business venture that he believes will provide sufficient revenue to satisfy his outstanding claims, including the Judgment. The Involuntary Petition has and will continue to cause severe harm to the Alleged Debtor's ability to develop and cultivate his new business venture, including severe constraints on the ability to secure investment capital for such venture.

The Alleged Debtor's intent to repay his creditors outside of bankruptcy through his business venture has the support of the Alleged Debtor's other creditors. The Petitioning Creditor is the only creditor actively pursuing the Alleged Debtor at this time. Given that a bankruptcy case is unlikely to provide any return to the Alleged Debtor's creditors, the Involuntary Petition was filed for the purpose of generating additional leverage for the Petitioning Creditor to extract a settlement from the Alleged Debtor's exempt assets. This is not a proper purpose for an involuntary bankruptcy case.

The discharge of the Judgment and other unsecured claims of the Alleged Debtor is clearly not in the best interest of such creditors, who would be better served by the dismissal of

this case in order to permit the Alleged Debtor to continue to restructure and repay its obligations outside of the bankruptcy process. The Involuntary Petition should therefore be dismissed.

### IV.     The Alleged Debtor is Entitled to Attorneys' Fees, Costs, and Damages Pursuant to Section 303(i)

The Alleged Debtor respectfully requests the entry of an order pursuant to section 303(i) of the Bankruptcy Code reimbursing him for his attorneys' fees and costs incurred in defending against the Involuntary Petition, as well as any actual and punitive damages that he suffers as a result of this improper involuntary bankruptcy case. Section 303(i) states:

> If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
>
> (1) against the petitioners and in favor of the debtor for—
>     (A) costs; or
>     (B) a reasonable attorney's fee; or
>
> (2) against any petitioner that filed the petition in bad faith, for—
>     (A) any damages proximately caused by such filing; or
>     (B) punitive damages.

11 U.S.C. § 303(i). As set forth above, the Involuntary Petition was filed in bad faith and with either actual knowledge of or a reckless disregard of facts establishing that the Alleged Debtor had twelve or more creditors. The award of the Alleged Debtor's attorneys' fees, costs, and damages is warranted and appropriate.

WHEREFORE, the Alleged Debtor requests that the Court: (i) dismiss the Involuntary Petition; (ii) grant the Alleged Debtor the costs, attorneys' fees, and damages caused by the filing of the Involuntary Petition, including punitive damages; and (iii) grant the Alleged Debtor such other and further relief as justice may require.

| | |
|---|---|
| Dated: October 7, 2014 | WHITEFORD TAYLOR & PRESTON LLP |
| | /s/ Michael E. Hastings |
| | Michael E. Hastings, Esq., Va. Bar No. 36090 |
| | 114 Market Street, Suite 210 |
| | Roanoke, VA 24011 |
| | Phone: (540) 759-3560 |
| | Fax:  (540) 343-1011 |
| | |
| | David W. Gaffey, Esq., Bar No. 85088 |
| | 3190 Fairview Park Drive, Suite 300 |
| | Falls Church, VA 22042-4510 |
| | Phone: (703) 280-3374 |
| | Fax: (202) 327-6158 |
| | |
| | *Counsel for Danny L. Darby* |

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 7th day of October, 2014, a copy of the foregoing Motion To Dismiss Involuntary Petition was sent to all parties receiving ECF notices in this case, and to the following parties by first-class mail, postage pre-paid:

William Shmidheiser
Lenhart Pettit, PC
90 North Main Street, Suite 200
Harrisonburg, VA 22802

Farm Credit of the Virginias, ACA
106 Sanger Lane
Staunton, VA 24402

Office of the United States Trustee
115 South Union Street, Ste. 210
Alexandria, VA 22314

/s/  Michael E. Hastings
Michael E. Hastings

*85259*